CASE 65—PETITION ORDINARY—MAY 23.

# Louisville and Nashville Railroad Company v. Earl's Adm'x.

### APPEAL FROM HART CIRCUIT COURT.

1. NEW TRIAL—PLAINTIFF REQUIRED TO REMIT PART OF VERDICT.— In this action to recover damages for personal injuries, the court had no power to require the plaintiff, in order to avoid a new trial, to accept judgment for a less amount than that found in his favor by the jury, and upon appeal by the defendant from the judgment for the reduced amount, which plaintiff accepted under protest, there must be a reversal, either upon the appeal or cross appeal, as the court should have granted defendant a new trial, if there were errors to its prejudice, and, if not, should have rendered judgment for plaintiff in pursuance of the finding of the jury.

2. IT WAS INEXCUSABLE NEGLIGENCE ON THE PART OF A FIREMAN ACT-ING AS ENGINEER to leave a detached car standing on the side-track of a railroad in such close proximity to the main track as not to allow a man's body to pass between the car and moving cars on the main track, and a brakeman riding on the ladder of a car on the main track, going from one point of work to another, was not guilty of such contributory negligence as to preclude him from recovering of the company for injuries received by him by being crushed between the moving car and the car on the side-track, it being the custom of brakemen to ride in that way in the discharge of their duties.

3. EVIDENCE—RES GESTÆ.—Statements made by the injured brakeman as to how the injury occurred having been brought out by defendant, it was competent for plaintiff to prove all that was said, as all the statements were made within a few seconds and evidently formed part of the same conversation. Besides, as the expressions were within a few seconds after the accident, they were competent as forming part of the transaction.

4. INSTRUCTIONS.—An uncontradicted fact may properly be assumed in an instruction.

5. PUNITIVE DAMAGES.—Gross negligence is sufficient to warrant the finding of punitive damages, and, therefore, so far as the instructions in this case required the jury to find willful neglect in order to give punitive damages, they were too favorable to defendant.

6. CONTRIBUTORY NEGLIGENCE.—Although the plaintiff's intestate was guilty of contributory negligence, the defendant is liable if the fireman in charge of the engine could, *by reasonable diligence*, have dis-

Louisville and Nashville Railroad Company v. Earl's Adm'x.

covered his danger in time to avert the injury. To authorize a recovery, it is not necessary that the defendant should have had actual notice of the injured party's fault in time to protect him.

7. LIMITING TIME FOR ARGUMENT.—The court did not abuse its discretion in limiting the time of counsel in their argument to twenty-five minutes, there being comparatively little conflict of testimony, and the instructions being unusually simple and direct.

8. EXCESSIVE DAMAGES.—A verdict for $4,000 for the "pain, anguish, loss of time," etc., suffered by the plaintiff's intestate during the ten days he lived after the accident was not excessive.

LEWIS McQUOWN FOR APPELLANT.

1. The court should have given the peremptory instruction asked by defendant, as the evidence showed contributory negligence.

   The brakeman is bound to exercise proper care, and can not claim indemnity for an injury resulting to him which might have been prevented if he had used reasonable vigilance. (3 Woods Railway Law, secs. 370–373; L. & N. R. Co. v. Coniff's Adm'r, 90 Ky., 560.)

   An employe who voluntarily places himself in a dangerous position is guilty of such contributory negligence that he can not recover. (Balt. & Pat. R. Co. v. Jones, 95 U. S., 439; Doggett v. Illinois R. Co., 34 Iowa, 284; Lewis v. Balt. R. Co., 38 Md., 588; Bailey v. Cincinnati, &c., R. Co., 14 Ky. Law Rep., 226.)

2. There was a failure to show willful neglect on the part of defendant, and for that reason also the peremptory instruction should have been given. (L. & N. R. Co. v. Coniff's Adm'r, 90 Ky., 560.)

3. The court erred in defining gross negligence when a recovery was not authorized by proof of gross negligence. The statute embraces only willful neglect, which "signifies a reckless indifference to or *intentional* disregard of the safety of others." (Cincinnati, etc., R. Co. v. Privitt's Adm'r, 92 Ky., 223.)

4. The court by the modification of instruction No. 9 in effect made appellant responsible for the failure of the fireman to *discover* Earl's danger in time to save, whereas the law in such cases only required the fireman, if *aware* of his peril, to use care to avoid the injury. (Illinois Cent. R. Co. v. Dick, 91 Ky., 434.)

5. It was error to allow the witness Brashear to testify as to Earl's declaration as to the cause of the injury, as it was not a part of the *res gestæ*.

6. While the argument of a case may be *reasonably* limited, the court has no power to so limit it as to make the right a mockery. (Williams v. Commonwealth, 82 Ky., 641.)

7. The damages were assessed by the court and not the jury, and for that reason appellant is entitled to a reversal. (Brown v. Morris, 3 Bush, 81.)

Vol. 94—24.

Louisville and Nashville Railroad Company v. Earl's Adm'x.

J. C. POSTON, J. J. STAMP and J. P. HOBSON for appellee.

1. The man in charge of the engine, though nominally a fireman, was for the time the engineer of the train, and the company is responsible for the injury of a brakeman from his neglect. (L. & N. R. Co. v. Brooks' Adm'r, 83 Ky., 129; L. & N. R. Co. v. Moore, 83 Ky., 684.)

2. It was the duty of the company to have its premises in reasonably safe condition, and it is responsible to employes for injuries received from objects left too close to the track. (Shearman & Redfield on Negligence, secs. 194, 198–201, 205.)

3. Plaintiff had the right to presume that the premises were in proper condition and to proceed with his duties in the usual manner until he learned to the contrary.

   If he was hurt while using ordinary care in so doing, the loss must fall on the party in fault. (C. & T. R. Co. v. Russell, (91 Ill, 298), 33 Am. Rep., 54; St. Louis, etc., R. Co. v. Irwin, (37 Kan., 701), 1 Am. St. Rep., 266; Illinois Cent. R. Co. v. Welsh, (52 Ill., 183), 4 Am. Rep., 593; Louisville, etc., R. Co. v. Wright, (115 Ind., 378), 7 Am. St. Rep., 432; Anderson v. Bennett, (16 Oregon, 515), 8 Am. St. Rep., 311; Scanlan v. Boston, etc., R. Co., (147 Mass., 484), 9 Am. St. Rep., 733; Kansas R. Co. v. Kier, (41 Kansas, 661), 13 Am. St. Rep., 311, and cases cited.)

4. Even if Earl, when placed in peril by defendant's negligence, with only a few seconds to decide what to do, failed to exercise the best judgment for his safety, he can not be denied relief on that account. (Shearman & Redfield on Negligence, sec. 89.)

5. The instructions clearly presented the law of the case, and are in substance the same as those approved in N. N. & M. V. Co. v. Dentzel's Adm'r, 91 Ky., 42.

6. The verdict for $4,000 was not excessive. (L. & N. R. Co. v. Sheets, 11 Ky. Law Rep., 781; L. & N. R. Co. v. Mitchell, 10 Ky. Law Rep., 211; K. C. R. Co. v. Ryle, 13 Ky. Law Rep., 862; L. & N. R. Co. v. Moore, 83 Ky., 675; M. & L. R. Co. v. Herrick, 13 Bush, 127; Lawson's Rights and Remedies, sec. 1221.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The first paragraph of the appellee's petition sought damages of the appellant company, by reason of its gross and willful neglect in crushing her intestate husband between two of its cars, and causing him great pain, anguish, loss of time, &c. The second sought damages for the loss of his life, caused by the willful

neglect of the appellant.  Being required to elect, she proceeded on the cause of action set up in the first paragraph, and obtained a verdict for four thousand dollars.   The court regarded this as excessive, and required her to take judgment for two thousand five hundred dollars, otherwise, as announced, a new trial would be granted.   Accordingly judgment for the latter sum was entered.  Both parties complain, and it is evident that if the company were entitled to a new trial, it should have been granted without the imposition of any terms.   If not, the appellee should have had her judgment in pursuance of the jury finding. In any event, the judgment for two thousand five hundred dollars is erroneous, and must be reversed. (See Brown v. Morris, 3 Bush, 82.)   The question then is, shall the appellee have judgment in conformity with the verdict of the jury, or shall the appellant have a new trial?

The solution of the question depends on whether or not there were errors committed on the trial of the cause to the prejudice of the company.   If yea, then a new trial must be ordered; if nay, judgment for four thousand dollars must be entered.

From the testimony it appears that Earl was a brakeman in the service of the company.   When the train reached Munfordville moving north, the engineer turned over the engine to the fireman.   The conductor was also off the train.   It was a freight train, and some switching had to be done.   Earl got off the cars at Logston's store, some eighty yards from the switch; the engine moved north with some box cars attached, towards and over the switch.   There

a box car was "kicked in" on the siding.  Some
four or five minutes are saved by this process of
"kicking in," and the conductor proves that they
were in a hurry.  After this the engine backed to
where Earl stood, who coupled it to the "dead" cars,
when, on Earl's signal, it again started north "pretty
fast."  Earl, as was the usual custom, caught up with
rear car and was riding on the ladder on the side,
intending to get off at the switch where other switch-
ing was to be done.  But the "kicked in" car had
not been rolled back far enough on the side track to
allow a man's body to pass between it and the mov-
ing cars.  This close proximity was noticed by the
fireman—the acting engineer—on backing down a few
moments before; and he testifies that he slowed up
to see if his cab would pass.  Earl knew nothing of
this, and when he noticed it as he rode rapidly to-
ward it, he could neither let go nor reach the top of
the car.  He tried the latter means of escaping the
danger, but was caught and badly crushed.  He lived
ten days in torture and died.  The plaintiff's evi-
dence was to the effect that Earl took no part what-
ever, by signals or otherwise, in placing or locating
the "kicked in" car, and while he might have seen
its dangerous position if his attention had been a'-
tracted in that direction, he was engaged in the work
of coupling the live to the dead cars, and then in
watching the ladder he was reaching for, and could
not have observed the danger.

It is insisted in the first place that the defendant
was entitled to a peremptory instruction because of
the negligence of the deceased, but we fail to perceive

wherein he was negligent.    The custom of brakemen riding on the ladder from one point of work to another was clearly established.    This was the well-known way of doing such work as was before Earl on this occasion. It was inexcusable negligence to leave the "kicked in" car so close to the main track that the engineer's cab could barely pass it.    This negligence caused the injury, and Earl is shown in no way to have contributed in thus locating this car.    The fireman slowed up to insure the safe passage of himself, but unfortunately failed to observe similar care for the safety of others.

Secondly, it is urged that incompetent evidence was permitted to go to the jury prejudicial to the company.

Immediately after Earl fell from the ladder the conductor testified that he (Earl) said to him that "he had tried to get to the top of the car, but it caught him before he could do so."    Brashear was then recalled for the plaintiff, and proved that he was present all the time after Earl fell, and there was no such talk, but that Earl did say that the accident was caused by the fool fireman, &c.    What Earl said as to how the injury occurred was first asked for and brought out by the company; and as all the talk took place within a few seconds, it was . evidently the same conversation, and if part was detailed all should be.    Moreover, the expressions were immediately upon the heels of the occurrence—within a few seconds of it—and can fairly be said to form a part of the transaction.

Thirdly, the instructions are complained of because No. 1 authorizes a recovery from the evidence, and

not from the preponderance; but in No. 8 the jury
were told that, "before plaintiff can recover in the
case, it is her duty to establish by the preponderance
of the evidence that the employes of the defendant
were guilty of willful or gross neglect. Ordinary
neglect will not authorize a recovery."

It is said that No. 2 "assumes loss of time, pain
and suffering, and then authorizes the jury to give
punitive damages 'if the negligence was willful.'"
It is well settled that an uncontradicted fact may
properly be assumed in an instruction, and the de-
ceased confessedly did suffer as indicated. To the
extent that the right of recovering punitive dama-
ges was based on the establishment of willful neglect,
the instruction was too favorable to the defendant.
It required the greatest degree of negligence when
only gross negligence was sufficient to warrant the
finding of such damages. (See L. & N. R. Co. v.
Mitchell, 87 Ky., 332; L. & N. R. C. v. McCoy, 81
Ky, 411.)

Instruction No. 9 required the jury to find for the
defendant, if they believed that Earl, in the perform-
ance of his duty as brakeman, failed to properly set
the car on the side track, and left it so as to injure
him in the further discharge of his duty, "unless
they further believe that the fireman in charge of the
engine could, by reasonable diligence, have discov-
ered his danger, and by the use of reasonable dili-
gence averted the injury." It is urged that the
fireman owed no duty to Earl if guilty of contribu-
tory negligence, unless he *became aware* of the dan-
ger to him, and then, by the exercise of care, could

have averted the injury. But in L. & N. R. Co. v. McCoy, *supra*, it is said: "We do not understand the law to be that the party charged with gross neg- lect is relieved from responsibility in every case by the contributory negligence of the injured party un- less he *had actual notice* of the injured party's fault in time to protect him. If the appellee, by his own negligence, contributed to such an extent to produce the injury to himself, that but for his negligence it would not have happened, then he has no cause of action, unless the appellant's agents in managing and coupling the train knew, or could have known, by ordinary attention, of the peril in which appellee's negligence had placed him, and failed to observe rea- sonable care to avoid the injury which followed."

This is substantially the instruction complained of. In No. 7 the jury had been told that if they "shall believe from the evidence that Earl negligently and carelessly undertook to ride on the side of the car at the time he was injured, and by the use of ordinary care and diligence he could have discovered his dan- ger in time to arrest the injury, then the law is for the defendant, and the jury should so find."

Taking the instructions together, the modification of No. 9 referred to the danger to Earl in his placing the car on the side track. That was the subject matter of the instruction, and the concluding clause referred to that danger, and not to the peril Earl may have placed himself in by riding on the ladder, but if otherwise the instruction was right. In switch- ing and handling cars the fireman must be diligent and wide awake to dangers in the rear as well as in

front. Indeed, the only danger to life was in the rear where the men were engaged in their hazardous work. If Brashear is to be believed, the slighest attention on the fireman's part to the frantic appeals and signals of himself and Earl to stop the train would have given Earl time to have reached the top of the car. A moment more and he would have escaped. The fireman says he saw nothing of these signals, but the other witness swears that he made them in plain view of him, and when his eyes were turned toward him.

Lastly, it is urged that the court erred in limiting the time of counsel in their argument to twenty-five minutes. It will be observed that while there are some twelve witnesses in the case, there is comparatively little conflict of testimony. The instructions are unusually simple and direct, and we do not think the court abused its discretion in this regard. Nor do we think the verdict excessive.

On the appeal of the company the judgment is affirmed, but reversed on the cross-appeal, and remanded with directions to enter judgment for four thousand dollars in conformity with the verdict of the jury.