161 U.S. 397 (1896)
HANSEN
v.
BOYD.
No. 118.
Supreme Court of United States.
Argued December 11, 12, 1895.
Decided March 2, 1896.
ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.
*402 Mr. Charles E. Flandrau for plaintiff in error.
Mr. Ralph Whelan for defendants in error.
MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.
The assignments of error set out in the record are fifteen in number. The first five are not pressed in the argument for plaintiff in error, and we only briefly notice them.
In number 1, it was assigned as error that the evidence conclusively showed that the transactions upon which the plaintiffs below claimed a right to recover were wagering and gambling contracts, and that the court erred in not so holding and the jury in not so finding.
This assignment is of course without merit, since it asks us to determine the weight of proof and thus usurp the province of the jury. There was no motion made at the close of the evidence to direct a verdict, and both parties therefore agreed to the submission of the issues of fact to the consideration of the jury. In the absence of such a request we must assume that there was sufficient evidence to warrant the court in permitting the jury to draw the inferences proper to be deduced *403 from the evidence in the case. Moreover, the bill of exceptions filed in the record does not purport to contain all the evidence.
The second, third, fourth, and fifth assignments of error cover exceptions to the admission in evidence of the rules of the Board of Trade at Chicago, the rules of the clearing house of that board, and the admission in evidence of certain testimony given by James E. Boyd, one of the plaintiffs, explanatory of the clearing house rules, and of the manner in which the payments of losses and profits accruing under the various transactions involved in this action were made by the clearing house of the Chicago Board of Trade. Evidence had been introduced on behalf of plaintiffs that the agreement with Hansen was that the transactions were to be conducted under the rules of the Board of Trade at Chicago, and that such rules were explained to him. The rules and regulations in question were therefore competent evidence. Bibb v. Allen, 149 U.S. 481, 489, 490. The oral testimony of Boyd tended to explain the purport of those rules and the transactions thereunder, and was consequently relevant.
The sixth assignment relates to the overruling of a motion, made at the close of the evidence for plaintiffs, that the court instruct a verdict for the defendant; and assignments seven to fifteen inclusive attack portions of the charge to the jury. As to the alleged error in refusing to instruct a verdict at the close of the evidence for plaintiffs, it is sufficient to say that it has been repeatedly held by this court that when, after such a motion, the defendant introduces testimony, as was done in the case at bar, an exception to the action of the court in refusing to direct a verdict is waived. Runkle v. Burnham, 153 U.S. 216.
Assignment seven asserts that the court erred in giving the following instruction:
"The time during which these transactions occurred commenced in August, 1888, and was concluded and the whole transaction finally closed up in June, 1889. The plaintiffs claim that the defendant applied to the Minneapolis office to employ them to sell and purchase wheat for future delivery; *404 that he inquired of the manager the commission to be charged, and was informed of the rate, and was also told by the manager in charge that it was a good time to make some scalps, but what that term means has not been developed by the testimony."
The exception taken to this portion of the charge was that the defendant, in his testimony, had "stated and developed the meaning of the word `scalp,' and that the charge excepted to was a denial of actual, material testimony introduced on the part of the defendant and material to his defence." In his brief, counsel for plaintiff in error asserts that the charge misled the jury, and, in effect, withdrew the evidence on the subject from the jury and wholly annulled its force. Concerning this alleged error, the trial judge, in his opinion denying the motion for a new trial, said:
"It is urged that the jury were misled by a statement in the charge that the word `scalps,' used by the agent of the defendant before the defendant authorized him to enter into any contracts for the purchase or sale of wheat, misled the jury.
"Hansen, the defendant, testified, in substance, that in the latter part of July, 1888, the manager of the plaintiff at Minneapolis was introduced to him by Mr. George Shepherd, who said: `I used to have a few deals in options, and when I was trading with him I had never made a loss;' and that the next day after the introduction the manager spoke to him in the Chamber of Commerce building, in Minneapolis, and said that `he knew I had some trades a year ago and they had roasted me pretty hard then, but he thought it was a good chance to make something back this fall by making some scalps.' On cross-examination, witness, on being asked `What do you mean by the word "scalps?"' said the word was used on exchange frequently when they mean `taking a short time, buy and sell as quick as you see a profit, and when you have a loss close it out at any amount.' `A scalp means a short deal.'
"The meaning of the word is not fully disclosed by this testimony, nor is it revealed by the answer to a question of *405 the court, when the witness, in substance, said that an example of a `scalp' was when a dealer, having previously bought wheat to be delivered in May, sold the same quantity to be delivered the same month and settled his deals before May."
In view of the evidence contained in the record and referred to in the opinion of the trial judge, there was no substantial error committed in the portion of charge now under review. The language of the court could not reasonably be understood by the jury as meaning more than that the court was of opinion that the precise meaning of the term in question had not been clearly shown by the evidence. The observations, however, of the court were mere comment upon the evidence and were evidently not intended, and we do not think could have operated, to prevent the jury giving such weight as they saw fit to the explanatory testimony on the subject.
Assignments eight, ten, eleven, and twelve may be considered together. They allege error in the following portions of the charge:
"8. It is claimed on the part of the plaintiffs that defendant was informed of the rate of commission for their services; that the contracts made for him would be subject to the rules, usages and regulations of the Chamber of Commerce of the city of Chicago, and that in all cases actual wheat must be purchased and sold, and the margins kept up to protect them against loss."
"10. The plaintiffs' theory is, and evidence has been introduced tending to sustain it, that they were employed by defendant, through the Minneapolis office, as brokers and commission merchants, to purchase or sell wheat, for future delivery, on his account, and that such sales and purchases were to be made on the Chicago Board of Trade with the members thereof; that such contracts were to be governed by the rules and usages of such Chamber of Commerce, and that in every instance actual delivery of wheat was intended by the parties to the contracts made for the defendant's account, and that these contracts were closed and settled up by the plaintiffs in accordance with these terms, and at the *406 defendant's request, and advances were made and their own money paid out for his benefit.
"11. All optional contracts, however, are not illegal under the statute which was read to you. If the option is to sell or purchase at a future time, then it is illegal and a wager; but if the option consists merely of a delivery within a specified time, the contract is valid, and what was done by putting up margins amounts to nothing unless the contract itself is illegal. The validity of an option contract depends upon the mutual intention of the parties thereto, and if a sale or purchase of actual wheat for future delivery is intended, it is valid. If the contract is lawful, the putting up of margins to cover losses which might accrue from fluctuations in prices in final settlement of the transactions, according to the rules and usages of the Board of Trade of the City of Chicago, is entirely proper and legitimate. These rules have been read to you by counsel for plaintiffs, and there is nothing in these rules on their face that indicates that they are in violation of the laws of Illinois or contrary to public policy.
"12. Courts, however, must recognize from necessity the methods of carrying on business at the present day, and apply well settled principles of the common law to enforce contracts, unless they are forbidden by statute or violate some rule of public policy. The daily mercantile business of the country, mercantile deals  and by that I mean the sale and purchase of personal property  could not be successfully carried on if merchants and dealers were unable to sell something which they did not have, but which they intended to get in the market and buy before the day of delivery. A trader has a right to sell, to deliver at some future time, that which he then has not, but which he expects to go into the market and buy; and the parties may agree mutually that there need not be a present delivery, but that such delivery may take place at some other time. Such future delivery contracts, however, must be in good faith; there must be an intention to make an actual sale and delivery of the article dealt in."
The sole objection made upon the argument to these several instructions was, in substance, that under the evidence in the *407 case the court was not warranted in assuming or the jury in finding that the transactions between Boyd & Bro. and Hansen might be valid. Obviously, however, such an objection cannot prevail in the absence of a motion on behalf of defendant at the close of the whole evidence for an instruction in his favor. Nor, if such motion had been made, could we review a ruling upon it in the condition of the record in this case, as the bill of exceptions does not purport to contain all the evidence.
Assignment No. 13 covers instructions, in which the court repeated plaintiffs' theory of the transactions, stated the rules of law governing the question as to when a contract was void as a wagering or gambling contract, and the facts necessary to be proven to the satisfaction of the jury before they could properly return a verdict to that effect. These instructions embraced a half dozen paragraphs of the charge, one paragraph in particular being very lengthy, and covering more than a page and a half of the printed record.
The exception noted to this part of the charge was, "that there is nothing in the pleadings, evidence, or record in this action to support or justify the theory of the plaintiffs stated by the court in this part of its charge here excepted to; that the portion of said charge here excepted to is prejudicial to the defendant and is misleading to the jury, is error in the charge and error in law on all the evidence and facts in the case." The assignment is without merit. As all the evidence is not shown to be contained in the record, we must assume that there was evidence in the case tending to support plaintiffs' theory of the case stated by the court. The exception is moreover too general, uncertain, and indefinite to merit detailed consideration.
Assignment No. 14 asserts that the court erred in giving the following instruction:
"I might say to you here that if you find from the evidence that any of these contracts had been offset under the rules and regulations as prescribed by the Board of Trade of Chicago, offsets between persons and dealers connected with that board through whom these plaintiffs operated, that is *408 not evidence of their illegality. The mode of settlement of bona fide contracts for the sale of actual wheat does not affect the validity of the contract if the original intention was to purchase, receive, take and deliver the actual wheat at the time specified when the contracts were made."
The exception taken to this instruction was "that the offsets and modes of settlement stated and referred to in the part of the charge here excepted to belong to the jury as proper and competent evidence, to be considered by them in determining the entire intentions of the plaintiffs in respect thereto, and as affecting and showing the original intention with which said contracts were made and were to be executed and closed; that said charge here excepted to characterizes said evidence as no evidence and virtually takes the same from the jury; that said charge here excepted to is prejudicial to the defendant, is misleading to the jury, and is otherwise error in law."
We are referred by counsel for plaintiff in error, in his brief, to the language of the exception, as his argument upon this assignment.
The court had informed the jury what was the theory of plaintiffs upon which they claimed a right to recover. (See tenth assignment of error, supra.) Pursuant to their theory plaintiffs contended that the purchases and sales of wheat on account of the defendant were to be made on the Chicago Board of Trade with the members thereof, and the contracts of defendant were to be governed by the rules and usages of such board, and that, in every instance, an actual delivery of wheat was intended. The contracts referred to in the criticised instruction were the contracts claimed to have been entered into by plaintiffs on account of defendant with members of the Board of Trade at Chicago. Just before giving the instruction the court had said to the jury:
"These memoranda which have been offered in evidence and the entries on the plaintiffs' books of these contracts are not conclusive evidence of their character. You are to determine what these contracts were; you are to determine them from the evidence in the case; you can look into the *409 transactions themselves as disclosed by the evidence and determine from the facts and circumstances attending their making and the conduct of the parties thereto with reference to them whether they are illegal within the rule laid down, or whether they are bona fide contracts for the purchase and sale of wheat to be delivered at a future time."
In determining the conduct of the parties to the contracts with reference thereto, particularly in view of other instructions of the court, we think it beyond question that the jury must have understood they were authorized to take into consideration the modes of offsets and settlements by which the contracts were cancelled. We do not think the instruction was amenable to the criticism made on behalf of defendant.
The greater part of the brief of counsel for plaintiff in error is devoted to argument in support of the contention that upon the undisputed evidence in the cause a verdict should have been directed for defendant. Aside from the circumstance to which we have before called attention, that the bill of exceptions does not purport to contain all the evidence introduced at the trial, this contention is fully answered by what we have said above in disposing of the first assignment of error.
We are of opinion, however, that the instruction covered by the ninth assignment of error was erroneous. The instruction is as follows:
"9. Now, if you find from the evidence that the plaintiffs, about April 29, 1889, informed the defendant by letter that the forty thousand bushels of May wheat in question could be at that time changed to June wheat, and that the defendant made no answer thereto, and if you further believe from the evidence that said May wheat was changed over into June, for and on account of the defendant, and that the plaintiffs rendered an account, a report, and statement to defendant that said change had been made, and the defendant received such report and statement and retained it, and made no objections to said change of said May wheat to June, then such facts amount to and were a ratification on the part of defendant of the acts of the plaintiffs in making such change."
*410 The exception taken to this instruction was, "that the evidence in the case did not justify the finding by the jury that `said May wheat was changed over into June wheat for and on behalf of the defendant,' and that the statement and form of the part of said charge excepted to is prejudicial to the defendant and for error in law."
It was not claimed that Boyd & Bro. had a general authority, by virtue of their dealings with Hansen, to make the so-called transfer; and, just preceding the instruction quoted, the court had called the attention of the jury to the fact that there was conflict in the evidence as to whether or not specific authority had been given to make it. Hansen was in default for margins on the purchase of May wheat, the price of the article had fallen very greatly, and on April 29, 1889, Boyd & Bro. had the right to close out the contract.
The instruction assumes that Boyd & Bro. and Hansen were so situated with reference to each other  as was the fact  that power could have been obtained from Hansen to make the purchase of June wheat, if he had wished to give the authority, and that the authority was asked for and was not given. Under such circumstances, we are of opinion that the unauthorized voluntary act of Boyd & Bro. could not be said, as matter of law, to have been ratified by Hansen by his mere retention, without complaint, of an account and statement rendered to him "that said change had been made," or, in other words, that Boyd & Bro. had made a new purchase for his account.
In Supervisor v. Schenck, 5 Wall. 772, 782, this court said: "Ratification may be by express consent, or by acts and conduct of the principal inconsistent with any other hypothesis than that he approved and intended to adopt what had been done in his name." The mere retention by Hansen of a report that an unauthorized purchase of 40,000 bushels of wheat had been made on his account was entirely consistent with the hypothesis that he did not approve and did not intend to adopt what he had previously declined to authorize. The mere silence of Hansen was certainly not necessarily indicative of an intention to adopt the unauthorized act of Boyd & *411 Bro., and it was, therefore, insufficient of itself to warrant an instruction that it constituted in law an adoption of such act. The question of whether the evidence established ratification should have been submitted to the jury.
The fifteenth assignment of error covers an instruction to the jury that if facts and circumstances introduced in evidence by the plaintiffs which tended to show that the order for the transfer of May wheat to June wheat was given, in connection with a number of other recited facts were found by the jury to exist, they would constitute a ratification. In view of our holding with reference to assignment number nine, it will be unnecessary to review this last assignment.
We find, therefore, that there is error in the record solely with reference to the instruction contained in the ninth assignment of error, that if certain facts were found by the jury, the defendant should be held to have ratified the purchase on April 29, 1888, of 40,000 bushels of wheat for June delivery. The question arises as to the proper judgment to be entered. The plaintiffs below recovered judgment for the full amount of their claim. The June wheat purchase and sale were distinct and separable from the other transactions upon which a recovery was had. The amount of loss arising from the purchase and sale of this wheat, including the commission charged by Boyd & Bro., is clearly ascertainable from the evidence contained in the record, while the interest thereon embraced in the judgment is matter of simple calculation. The rule has been adopted by this court that it is proper, either for the trial court upon an application for a new trial, or for an appellate court in reviewing a judgment, to permit the party, in whose favor a verdict or judgment has been returned or entered, to avoid the granting of a new trial on account of error affecting only a part thereof, by entering a remittitur as to such erroneous part, when the court can clearly distinguish and separate the same. Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41, and cases cited, p. 53; Phillips & Colby Construction Co. v. Seymour, 91 U.S. 646, 656.
Following the practice pursued in the last cited case, and also in Washington & Georgetown Railroad Company Co. v. *412 Harmon, 147 U.S. 571, 590, we will not reverse the judgment below, if the defendants in error will remit the excess therein in the particulars heretofore indicated, that is, the loss on the purchase and sale of the June wheat ($1300), the commission charged in that transaction ($50), and interest on those items from June 8, 1889, to the date of the verdict.
Ordered, that if the defendants in error will within a reasonable time during the present term of this court file in the Circuit Court of the United States for the District of Minnesota a remittitur of such excess, and produce and file a certified copy thereof in this court, the judgment, less the amount so remitted, will be affirmed; but, if this is not done, the judgment will be reversed. In either event the costs must be paid by defendants in error.
MR. JUSTICE BREWER, not having heard the argument, took no part in the decision of this cause.