[Civil No. 843.    Filed March 30, 1905.]

[80 Pac. 359.]

THE SOUTHERN PACIFIC COMPANY, a Corporation, Defendant and Appellant, v. S. F. FITCHETT, Plaintiff and Appellee.

1. VERDICT—DAMAGES—EXCESSIVE—REMEDY—REMITTITUR—REV. STATS. ARIZ. 1901, PARS. 1389, 1450, 1455, CITED—SOUTHERN PACIFIC CO. V. TOMLINSON, 4 ARIZ. 126, 33 PAC. 710, DISTINGUISHED.—Under paragraph 1389, *supra*, providing that "in all cases, both at law and in equity, either party shall have the right to submit all issues of fact to a jury" where the court deems excessive a verdict for damages which are in their nature incapable of exact ascertainment, as for injured feelings, and is satisfied that such excessive verdict was due to the influence of passion and prejudice, it was not within the province of the court to substitute its own estimate of the damages for that which it had rejected by ordering a *remittitur*, but the question of the proper sum to be awarded was one of fact, which should have been submitted to the determination of another jury.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Edward Kent, Judge. Reversed.

The facts are stated in the opinion.

Frank Cox, and Alfred Franklin, for Appellant.

A. C. Baker, and Walter Bennett, for Appellee.

To deny the right of plaintiff to remit a part of the judgment as a condition of permitting the judgment to stand is to ask this court to disregard the statute which gives him that right. Paragraph 1455 of the Revised Statutes of Arizona provides that such *remittitur* shall cure any error in the verdict or judgment by reason of such excess.

An excessive verdict may be allowed to stand if the plaintiff will enter a *remittitur* for the excess. And where the damages are not sustained by the evidence the court may require the plaintiff to choose between a *remittitur* and a new trial. *Kinsey* v. *Wallace*, 36 Cal. 462; *Illinois Central Ry. Co.* v. *Ebert*, 74 Ill. 399; *Collins* v. *Council Bluffs*, 35 Iowa, 432; *Lombard* v. *Chicago etc. Ry. Co.*, 47 Iowa, 494; *Doyle* v. *Dixon*, 97 Mass. 208, 93 Am. Dec. 80; *Belknap* v. *Railway Co.*, 49 N. H. 373; *Town of Union* v. *Durkes*, 38 N. J. L. 21; *Pendleton Ry. Co.* v. *Rohmann*, 22 Ohio St. 446.

An excessive verdict is cured by *remittitur* of the excess. *Ferguson* v. *Ferguson*, 38 Ark. 238; *Dodds* v. *Roane*, 36 Ark. 511; *Duffy* v. *Dubuque*, 63 Iowa, 171, 18 N. W. 900; *Attrell* v. *Patterson*, 58 Md. 226; *Higgs* v. *Hunt*, 75 Mo. 106. A verdict for excessive damages may be cured by release of the excess in actions for tort as well as in actions on contracts. *Little Rock Ry. Co.* v. *Barker*, 39 Ark. 491; *C. and M. R. Co.* v. *Himrod Furnace Co.*, 37 Ohio St. 434; *Corcoran* v. *Hannan*, 55 Wis. 120, 12 N. W. 468.

The remission may be made either in trial court or by appellate court. *Bank of Kentucky* v. *Ashley*, 2 Pet. 327, 7 L. Ed. 440; *Trischet* v. *Hamilton etc. Co.*, 14 Gray, 456; *Cram* v. *Hadley*, 48 N. H. 191; *Toledo etc. Ry. Co.* v. *Beals*, 50 Ill. 150; *Strong* v. *Hool*, 41 Wis. 659.

DAVIS, J.—On May 9, 1901, the appellee purchased from the agent of the Atchison, Topeka, and Santa Fe Railway Company in Denver, Colorado, a round-trip excursion ticket entitling him to passage from that city to Deming, New Mexico, thence over the Southern Pacific Company's line to Maricopa, thence over the Maricopa and Phœnix Railroad to Phœnix, and to a return by the same route. The terms of the

contract printed upon said ticket, and signed by the appellee at the time of its purchase, expressly provided that the said ticket was not transferable. It was also provided that the said ticket would be limited for the return passage of the original purchaser to the date canceled in the margin thereof, and that the same would only be good for such return passage within said limit, after identification of the said purchaser by writing his signature on the back thereof, and by other means, if necessary, in the presence of the ticket agent of the Maricopa and Phœnix Railroad at Phœnix, Arizona. Another provision of the contract declared that the said ticket would be void unless signed by the passenger in ink, or if more than one date be punched, or if it show alteration by erasure or otherwise. The conductor was expressly authorized to take up the ticket if presented by any other than the original holder, whose signature and description were recorded thereon. The ticket so purchased was of a form in common use by the transportation companies in their passenger service. There was printed upon the margin thereof (1) a column of years, running from 1893 to 1901, inclusive; (2) abbreviations for the calendar months of the year; and (3) numbers from 1 to 31, representing the days of the month. It was intended that a date to be canceled in this margin should indicate the extreme limit of the ticket. The year "1902" was not printed upon this particular ticket, but these figures were added to the column in ink, and then punched; the punch being so applied, however, that it also canceled one of the figures of the printed designation "1901." The abbreviation "Feb.," indicating the month, and the number "9," indicating the day of the month, were also punched. The appellee's signature to the contract on the face of said ticket was written as "S. F. Fitchett." He traveled on the ticket to Phœnix, over the route indicated, and on May 17, 1901, in that city, presented said ticket to the agent of the Maricopa and Phœnix Railroad, and signed the same on the back thereof, in the presence of said agent, who, in turn, duly stamped and signed it for return passage. The appellee's second signature appeared upon the ticket as "F. Fitchett," which is satisfactorily explained by him as having been caused by the failure of his pen to let down ink in forming the first initial of his name. There was some similarity in

the handwriting of the appellee's signature and that of the Phœnix agent, which appeared immediately below it. The appellee started upon his return journey, and proceeded as far as Maricopa, at which point, on the morning of May 18th, he boarded one of the appellant's regular passenger trains, eastbound. He presented his ticket to the conductor on this train, who examined and punched it, and passed on. Shortly thereafter he inquired of the conductor about getting a stopover at Tucson, when the latter asked to again see his ticket. Appellee produced it, and upon this second examination the conductor commented upon the irregular manner in which the ticket was punched, and also spoke of peculiarities about the signatures thereon. The appellee testified that the conductor, referring to the signatures on the back of the ticket, said, "The man that signed that name there has signed the agent's name below," and that this remark was repeated by the conductor in a loud tone of voice, so that it attracted the attention of all the people on the car. The conductor, in his testimony, claimed that his language was "that it looked like whoever signed one signed the other." After some verbal controversy the conductor kept the ticket, and demanded that the appellee pay his fare, which demand was complied with by the appellee, to the extent of the payment of $5.85 required for his passage to Tucson. There was no attempt at any time to eject the appellee from the train. He stopped off at Tucson, where he remained for a period of eleven days, to await, as he claims, the arrival of funds necessary to enable him to proceed upon his journey to Denver. The conductor also left the train at Tucson, that being the end of the division, and immediately conferred with the division superintendent about the ticket which had been the subject of the recent controversy; the result of the conference being a decision to return to the passenger his ticket, and the amount of the fare which he had paid. The conductor promptly started out in the city to find appellee, to deliver him the ticket and money, and met him about a block from the depot. The appellee's own account of what occurred at this meeting is as follows: "I seen the conductor on the sidewalk. I was going down towards the depot, on one side of the street, and he was coming down the same side, and I started diagonally across the street, and he started

diagonally to head me off, I suppose; and when I got on the sidewalk he was nearly on the sidewalk, and I turned around to go the other way, because I did n't want to meet him or see him. He says, 'I want to see you a minute.' I says, 'I don't want to see you. I want you to keep away from me. I have seen enough of you for one day.' He says then, 'I've got a ticket and some money for you,' and I walked right on, and paid no attention to him.''

In his action against the appellant, brought in the district court of Maricopa County on March 20, 1902, the appellee claimed four different elements of damage, viz.: 1. For the loss of his railroad ticket; 2. Expenses necessarily incurred while detained in Tucson; 3. Injury to his business from the delay; and 4. Mental suffering, anguish, and humiliation. With its answer to the suit, the appellant tendered and paid into court the sum of $48.20, for the value of the ticket and the fare paid. A trial of the case resulted in a verdict in favor of the appellant, which, on the appellee's motion, however, was set aside by the court and a new trial granted, on account of a technical defect in the tender, under the peculiar state of the pleadings. Upon the second trial of the case, under slightly amended pleadings, the jury returned the following verdict against the appellant:—

"We, the jury duly impaneled and sworn in the above-entitled action, upon our oaths do find for the plaintiff, and assess his damages at:

$    48 20, railroad ticket.
     22 00, expenses in Tucson.
 1,000 00, injured feelings.
--------
$1,070 20
                "C. M. ZANDER, Foreman."

There was a motion by the appellant to set aside this verdict and for a new trial, based upon various grounds,— among others, that the verdict was excessive, not warranted by the evidence, and was given under the influence of passion and prejudice. In ruling upon this motion, the learned judge of the trial court expressed his views as follows: "The verdict of the jury in this cause shows that they found as a

fact that the language and conduct of the conductor was such as to have caused an injury to the feelings of the plaintiff, for which he should be compensated. I do not think it is the province of the court to set aside the verdict because the opinion of the court in that regard may not be in accord with that of the jury. If, however, the damages awarded by the jury as compensation for such acts are excessive, it is the duty of the court to set aside the verdict. Apart from the expenses incurred by the plaintiff, there is no claim of damage or loss by the plaintiff, except for compensation for the injury to his feelings and for the loss of his time. The jury, by their verdict expressly found that the plaintiff was not damaged by the loss of his time, and the only question is whether an award of $1,000 is excessive as compensatory damages for the injury to the feelings of the plaintiff by reason of the acts complained of. Taking the evidence in its most favorable aspect for the plaintiff, the only indignity or humiliation suffered by him was from the statement of the conductor made in the hearing of other passengers, with whom the plaintiff was unacquainted, which, in effect, accused the plaintiff of having signed a name on the ticket not his own. There was no attempt to eject the plaintiff from the train or offer him any other slight or indignity, and all the subsequent acts of the company and its agents were with a view of rectifying the mistake made. The apparent irregularities of the ticket, as presented by the plaintiff to the conductor, justified the conductor in making proper inquiries, and in taking proper action in respect thereto in the line of his duty, but did not justify him in accusing the plaintiff of having improperly signed the ticket, although it is clear there was no malice or ill motive on the part of the conductor. Under all the circumstances of the case, and in the light of all the evidence adduced, I am of the opinion that an award by the jury of $1,000 for the injury to the feelings of the plaintiff is clearly in excess of what is just and proper as a money compensation therefor. The motion for a new trial is granted unless the plaintiff within ten days reduce the verdict herein by remitting therefrom the sum of $600.'' The appellee entered a *remittitur* of six hundred dollars, in accordance with the suggestion of the court, whereupon the motion for a new trial was denied. The appeal is

from the order denying the motion for a new trial, and from the judgment entered on the verdict.

Of the errors which the appellant assigns, one which we deem to be of chief consequence is based upon the action of the trial court with reference to the *remittitur*, involving, as it does, an important question of procedure, which has never been directly passed upon in this territory. It was the expressed view of the trial court that the award by the jury of one thousand dollars for the injury to the feelings of the appellee was clearly in excess of what was just and proper as a money compensation therefor. It must also have appeared to the court, as it conclusively does to us, that this verdict, so disproportionate to the injury proved, was not the result of cool and dispassionate consideration of the jury. Under these circumstances, did the court have the power, against the objection of either party, to render judgment for the balance of the verdict, after remitting therefrom the part which it deemed excessive? Upon this question there is an apparent conflict in the authorities, attributable in some measure to the varying provisions of the local codes. There are actions, the subject of which has a contract, commercial, or other established standard of valuation, where the amount of the verdict, when the facts are shown, becomes generally mere matter of computation. It seems to be well settled that in this class of actions any excess in the verdict above what the evidence satisfactorily establishes may, with the assent of the party in whose favor it is rendered, be eliminated by *remittitur*, and judgment entered for the residue. "The exercise of such power," it has been said, "is sanctioned on the theory that the excess arises from misapprehension of the law or the facts, or error in computation, not necessarily permeating and vitiating the entire verdict, and which it is competent to correct, with the assent of the party whom alone the correction could prejudice, by striking therefrom any distinct item, or excess in the computation of its value, appearing to be unsupported by the evidence." The rule is a salutary one, and, when employed with discretion, terminates litigation while promoting justice. But in that class of actions in which the opinion of the jury, unaided by any known standard of valuation, determines the magnitude of the recovery, the power of the court over an excessive verdict is

considered by many authorities to be quite different. Although the verdict, if purged of any supposed excess, might, in the opinion of the court, be well sustained as to the residue by the facts disclosed, yet the manifest presence and influence of passion, prejudice, or partiality in producing the excess vitiates the verdict *in toto,* and, according to these authorities, excludes the power of the court to invalidate or save any part of it against the consent of either party. It was a theory of the common law that the money value of personal wrongs which could have no certain standard of measurement should not be committed to the arbitrament of a single mind, but should be measured by the average of impartial opinion, of which the concurrence of twelve minds, uninfluenced by passion, resentment, or corruption, would be a fair expression. "It is the peculiar province of the jury," observes a noted law-writer, "to decide such cases under appropriate instructions from the court, and the law does not recognize in the latter the power to substitute its own judgment for that of the jury. Although the verdict may be considerably more or less than, in the judgment of the court, it ought to have been, still it will decline to interfere, unless the amount is so great or so small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake, or, in other words, that it is the result of accident or perverted judgment, and not of cool and impartial deliberation. When the verdict is thus excessive or deficient, the trial court, in its discretion, will interpose and set it aside." 2 Sutherland on Damages, 3d ed., sec. 459. But when a verdict is tainted by the presence of any such infirmities, is it safe to permit any portion of it to stand as the basis of a judgment? If recklessness has controlled in measuring the extent, may it not be probable that it also controlled in determining the right of recovery? In *Southern Pacific Co.* v. *Tomlinson,* 4 Ariz. 126, 33 Pac. 710, this court, speaking through Mr. Justice Sloan, said: "A trial court has the power, where excessive damages have been allowed by the jury, and where the motion to set aside the verdict is based upon this ground, to make a remission a condition precedent to overruling the motion. . . . Of course, if it is apparent to the trial court that the verdict was the result of passion or prejudice, a *remittitur* should not

be allowed, but the verdict should be set aside. In passing upon this question the court should not look alone to the amount of the damages awarded,. but to the whole case.'' The case which evoked the foregoing expression was an action based upon injuries resulting in death. It is therefore readily distinguishable from the case at bar, in the point that the damages therein were susceptible of accurate computation from the evidence. The supreme court of Georgia holds that, in suits to recover for personal injuries, it is not competent for the trial court to say that the verdict shall stand for any definite sum less than it designates, as a condition for refusing a new trial. *Railway Co.* v. *Harper*, 70 Ga. 119. The rule in that state is that, where general damages have been recovered for a personal tort, if they be so excessive as to lead the court to suspect bias or prejudice, the judge has no power to require a portion of the damages written off, and thereupon refuse a new trial; but it is otherwise where the damages claimed are special, and from the testimony can with accuracy be computed in dollars and cents, as in cases of tortious homicides. *Railway Co.* v. *Godkin*, 104 Ga. 655, 69 Am. St. Rep. 187, 30 S. E. 378. In Kentucky the trial court cannot, in an action to recover for personal injuries, require the plaintiff, in order to avoid a new trial, to accept a judgment for less than the verdict awards; and, if such judgment is accepted under protest, it will be reversed either upon the defendant's appeal or upon cross-appeal. *Railway Co.* v. *Earl's Admr.*, 94 Ky. 368, 22 S. W. 607. The Texas courts denied the power to require a *remittitur* in actions to recover damages for torts, but the rule has been changed by statute. *Railway Co.* v. *Syfan*, 91 Tex. 562, 44 S. W. 1064. The same view of the main question seems to be favored in West Virginia. *Vinal* v. *Core*, 18 W. Va. 1; *Unfried* v. *Railroad Co.*, 34 W. Va. 260, 12 S. E. 512. It is also indorsed in Arkansas. *Railway Co.* v. *Hall*, 53 Ark. 7, 13 S. W. 138. This is also the view in Missouri as to the supreme court, but not as to the trial courts. In *Gurley* v. *Railway Co.*, 104 Mo. 211, 16 S. W. 11, it was said by the former court: ''Whenever the verdict does not, upon its face, appear to be the result of passion or prejudice, it is wholly within the province of the jury; but, when it does so appear, then it ought to be set aside. We have no scales by which we can determine what por-

tion is just, and the result of reason, based upon the evidence, and what part is poisoned with prejudice and passion. We do not think it within our province to assess the damages. When we set aside any part of the verdict, we destroy its integrity, and we have no right to set ourselves up as triers of facts, and render another and a different verdict. We think the only logical course in such cases is to let the verdict stand or set it aside as an entirety.'' The supreme court of Colorado had this subject under discussion in a recent and well-considered case, in which the authorities were reviewed, and an attempt made to distinguish and harmonize them. The conclusion there reached was that in an action for personal injuries, where the verdict was excessive, and apparently the result of passion or prejudice, the trial court could not order a *remittitur* of the excessive part and give judgment for the residue, but must grant a new trial. *Davis Ironworks Co.* v. *White,* 31 Colo. 82, 71 Pac. 384. The supreme court of the United States, speaking through Mr. Justice White, in *Hansen* v. *Boyd,* 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746, said: ''The rule has been adopted by this court that it is proper either for the trial court upon an application for a new trial, or for an appellate court in reviewing a judgment, to permit the party in whose favor a verdict or judgment has been returned or entered to avoid the granting of a new trial on account of error affecting only a part thereof, by entering a *remittitur* as to such erroneous part, when the court can clearly distinguish and separate the same.'' The practice of ordering a *remittitur* within the limits of the last-mentioned rule involves no departure from sound principle, and is expressly sanctioned by our code. Rev. Stats. 1901, pars. 1450, 1455. Authorities are also to be found which will support the practice in both appellate and trial courts of reducing judgments and verdicts, even in those cases where no standard of measurement exists, and although it be apparent that the jury's excessive finding must have been influenced by passion, prejudice, or a perverse disregard of justice, but we are disposed to question their soundness in principle.

In the case at bar the trial court was of the opinion that more than half of the damages awarded for the appellee's ''injured feelings'' were excessive. It was impossible to tell

how the jury made up their verdict, but it was evidently not the result of cool and dispassionate consideration. Under these circumstances, we think it was not the province of the court to substitute its own estimate of the damages for that which it had rejected, but that the question of the proper sum to be awarded was one of fact, which should have been submitted to the determination of another jury. We are the more readily led to this view when we consider that the language of our code is that "in all cases, both at law and in equity, either party shall have the right to submit all issues of fact to a jury." Id., par. 1389. Whatever may be the effect of this provision as to equity cases, it was the manifest intention of the legislature to enact as strongly as words could express its will in favor of the right to have questions of fact left to the determination of the jury.

Other errors are assigned by the appellant, but, as the case will have to be reversed because of the action of the court with respect to the *remittitur*, and the other questions presented may not arise upon another trial, we deem it unnecessary to discuss them.

The judgment and order appealed from will be reversed and the cause remanded to the district court for a new trial.

SLOAN, J., and DOAN, J., concur.