## AMERICAN RADIATOR CO. v. FOSTER.
### No. 7473.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1938.

Thomas H. Adams, of Detroit, Mich., and Inzer B. Wyatt, Jr., of New York City (Hill, Hamblen, Essery & Lewis, Charles E. Lewis, and Thomas H. Adams, all of Detroit, Mich., and Sullivan & Cromwell and Inzer B. Wyatt, Jr., all of New York City, on the brief), for appellant.

Orville H. Foster, Jr., of Detroit, Mich. (Orville H. Foster, Jr., of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment entered on a verdict directed in favor of appellee in an action to recover royalties claimed to be due under a license agreement. Appellee invented and patented an expansion coil used in electric refrigeration, for the manufacture and sale of which appellee gave to appellant an exclusive license under a contract executed August 7, 1929. The contract called for a down payment of $7,500 to be considered as advance royalties, which were to be credited on any devices manufactured by appellant until January 1, 1932. Royalties on devices actually manufactured up to the cancellation of the contract by appellant on June 21, 1932, effective January 1, 1933, have been paid. The District Court construed the license as providing for payment of minimum royalties, and found appellant liable under the minimum requirements for devices not manufactured up to the time appellee cancelled the contract, effective February 11, 1933.

Appellant claims that the license agreement imposes no unconditional obligation as to manufacture of or payment for a minimum number of devices. The principal question is whether the District Court erred in directing a verdict.

Appellant relies upon paragraphs 4 and 7 of the contract, which read as follows:

"4. It is agreed and understood between the parties hereto that, *in order to maintain this agreement in force,* the Licensee shall manufacture and sell and/or pay royalty as hereinafter provided, upon a minimum number of licensed devices according to the following schedule:

"Prior to December 31, 1930 not less than 12,500 devices

"For the year 1931 not less than 25,000 devices

"For the year 1932 not less than 45,000 devices

"For each and every calendar year after 1932 not less than 50,000 devices subject, however, to the provisions of Paragraph 7."

"7. In the event that for the period ending December 31, 1930 or for any calendar year thereafter, beginning January first, during the continuance of this license agreement the total number of licensed devices sold by the Licensee shall not be the minimum number of devices as required by Paragraph 4 hereof with respect to such period or calendar year, the Licensee *shall at its option have the right and can preserve this license* by paying to the Licensor a sum of money which shall be ascertained by multiplying the average royalty paid during said period or during that year for each device of the total number of individual devices of all types, designs and constructions actually sold during that period or year by the number of devices necessary to make up the difference or deficit between the number of devices actually sold and the minimum number of devices required by Paragraph 4 hereof for that period or year—it being

understood and agreed that if the Licensee *exercises its right to preserve the license* under the provisions of this Paragraph 7, the sum to be paid as therein provided shall be paid to the Licensor at the time payment is made of earned royalties for the last quarter of that period or calendar year, as provided by Paragraph 6 hereof. In the event no licensed devices are sold during the period ending December 31, 1930, the minimum royalty for such period shall be Twenty-Five Hundred Dollars ($2,500), and in the event no licensed devices are sold during the year 1931 the minimum royalty for said year shall be the sum of Five Thousand Dollars ($5,000), for which sum, or either of them, the said initial payment of Paragraph 3, or such part thereof as may be necessary to liquidate the minimum for said period, or said year, shall be credited in full to the Licensee." (Italics ours.)

Appellant urges that the express terms italicized above demonstrate that the contract imposes no positive obligation upon the licensee to manufacture or pay royalties upon any specific number of devices, and that the case is squarely governed by the decision in Standard Appliance Co. v. Standard Equipment Co., 6 Cir., 296 F. 456. There the court considered a contract which contained a phrase almost identical with that embodied in paragraph 4 of the instant contract, namely, that "in order to keep this agreement in force" the second party should pay certain minimum royalties. It was argued there, as here, that to construe this contract otherwise than as containing an absolute obligation would permit the licensee by its non-performance to justify repudiation of the contract; but the court held that this contention was defective in that it assumed that the contract was of the absolute character claimed. On the contrary, the court said that the contract contained (page 457) "no absolute promise to manufacture even one motor, or to pay any royalty save upon those which are manufactured."

With exception of the phrase above quoted the two cases are not identical in their determinative facts. In the Standard Appliance Case the license contract was for the fifteen-year remaining term of the patent, and suit was brought to recover damages for the entire period from the first half of the third year to the end of the fifteen years as upon an anticipatory breach. Appellee here sued only for minimum royalties claimed up to the effective date of the cancellation of the contract by appellee on February 11, 1933. Moreover, it does not appear that in the Standard Appliance Case there was a provision for cancellation by the licensee. Here the contract contained a provision under which the licensee had the right at its option to cancel and terminate the agreement on January 1, 1932, or on January first of any year thereafter, "upon giving notice of such cancellation and termination to the Licensor in writing by registered mail at least six months previous to the date the Licensee desires to cancel and terminate this agreement and upon payment to the Licensor of all moneys due under this agreement up to the date of such cancellation and termination, whereupon this license and agreement shall forthwith cease and terminate and be of no further force or effect."

In the Standard Appliance Case the court refused to award damages for the entire remaining period of fifteen years, but gave judgment for $2,500 on account of royalties due for the year 1920, prior to notice of termination. On this point the judgment in the cited case supports the decision of the District Court herein. There the licensee gave notice of termination of the contract on December 31, 1920, effective immediately. The trial court held that by its notice the licensee recognized the contract as being in force for the full year of 1920. Here the notice of cancellation was given by the licensee in June, 1932, to take effect under the contract of January 1, 1933.[1] Appellant thus in its

---

[1] "Mr. Howard L. Foster, 2230 Buhl Building, Detroit, Michigan.

"Dear Sir: Please Take Notice that American Radiator Company hereby exercises its option and right as of the date hereof to cancel and terminate an agreement dated August 7, 1929 respecting U. S. Letters Patent No. 1,702,565 granted February 19, 1929, and made by and between you, Howard L. Foster, Licensor and said American Radiator Company, Licensee, said cancellation and termination to be and become effective on the first day of January 1933 pursuant to the provisions of said agreement.

"Signed at New York City, New York this 21st day of June, 1932.

"American Radiator Company (C.G.H.)

"By (Sgd.) Rolland J. Hamilton,

President"

notice recognized the contract as being in effect for the full year of 1932.[2]

 In this case the terms of the notice and the fact that the appellant continued to manufacture and sell the licensed devices under the agreement during the entire year of 1932 furnish a reasonable basis for an inference that the licensee did agree to keep the contract in force and to be bound by its minimum requirements during the year 1932. The ambiguities of the contract were removed by the practical construction placed upon it by the parties. Topliff v. Topliff, 122 U.S. 121, 7 S.Ct. 1057, 30 L.Ed. 1110.

Also we think that paragraph 14 of the contract can not be reconciled with appellant's theory of the agreement. If appellant, by simply not manufacturing devices, can escape its obligation under the contract by failing to maintain it "in force," then the provision for cancellation by the licensee is superfluous.

 Other paragraphs of the contract speak repeatedly of the minimum requirements of the contract, and of the obligation with respect to the payment of minimum royalty. Reading the contract as a whole, we conclude that the court was correct in its ruling that this contract imposed a definite obligation to pay minimum royalties up to the time that the licensee should terminate that obligation by availing itself of the provisions of paragraph 14. This means that the judgment must be affirmed in so far as it is based upon an obligation to pay minimum royalties during the year 1932. But since appellant's notice to terminate the license took effect by its terms and in accordance with the provisions of the contract on January 1, 1933, the judgment should not rightfully include royalties for any part of 1933. The amount of the judgment included two items which the parties agreed were correct as to amount, a total of $9,146.43 for 1932, including interest, and $1,122.36 (including interest) for the period, between January 1 and February 11, 1933, when the licensor gave notice of termination. The award for any part of 1933 was erroneous. Since this error is capable of correction by computation merely, there need be no new trial if the judgment is reduced by the proper amount. Hansen v. Boyd, 161 U.S. 397, 16 S.Ct. 571, 40 L.Ed. 746; Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791, 807; C. J. Huebel Co. v. Leaper, 6 Cir., 188 F. 769, 774.

It is ordered that if the appellee within twenty days after this opinion is filed shall file a remittitur of $1,122.36 in the office of the clerk of the District Court of the United States for the Eastern District of Michigan and a certified copy thereof in the office of the clerk of this court, the judgment, less the amount so remitted, will be affirmed with costs in this court to be paid by the appellant. But if this is not done, judgment will be reversed with costs to be paid by the appellee.

---

[2] The District Court in its memorandum opinion in the Standard Appliance Case said that the rendering of judgment in favor of the plaintiff for the sum of $2,500 "might seem inconsistent with the construction herein given to the terminal provisions of the contract except that defendant's notice dated December 30, 1920 recognized that the obligations of the agreement were in force during the year 1920 notwithstanding its failure to pay the minimum royalty accruing. July 1st." The court went on to declare that a modification of the original agreement might be inferred whereby the licensee agreed to pay installments for 1920.

