### LATHAM et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1924.)

No. 2206.

1. Criminal law ⏦901, 1054(3)—Motion for instructed verdict should be made after close of all testimony and exception taken to ruling to insure review.

A motion for instructed verdict, made at the close of the government's case, should be renewed at the close of all the testimony, and if refused an exception taken to require consideration by the appellate court; but, in the absence of exception, that court may consider

whether there is any substantial evidence of guilt.

**2. Criminal law ⚖═97(3)—Persons in charge of whisky-laden vessel coming within territorial waters of United States, though inadvertently, subject to arrest if they intended violating the law.**

Persons in charge of a vessel sailing along near the territorial waters of the United States with a cargo of whisky, and who sold a part of the same to boats from shore, are subject to arrest if they come within those waters, though inadvertently, and to prosecution as principals for aiding and abetting the illicit traffic in the United States, and it is not a defense that their sales were made in the high seas.

Smith, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Criminal prosecution by the United States against B. W. Latham, W. B. Cowart, and V. A. Schwarz. Judgment of conviction, and defendants bring error. Affirmed.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell and R. M. Hughes, Jr., all of Norfolk, Va., on the brief), for plaintiffs in error.

Paul W. Kear, U. S. Atty., and L. S. Parsons, Asst. U. S. Atty., both of Norfolk, Va.

Before WOODS and WADDILL, Circuit Judges, and SMITH, District Judge.

WOODS, Circuit Judge. The defendants Latham, Cowart, and Schwarz, tried together by consent, were convicted on identical informations charging in the first, second, and third counts respectively possession, sale, and transportation of 28,838 bottles of whisky on board the schooner Pesaquid, about two miles off Portsmouth Island, Va., within the territorial waters of the United States.

[1] Error is assigned in the refusal of a motion to instruct the jury to acquit made at the close of the evidence for the government, on the ground that nothing had been adduced tending to prove the defendants guilty of any of the crimes charged. This motion should have been renewed at the close of all the testimony, and if refused an exception should then have been noted in order to require consideration of the question by this court. Hansen v. Boyd, 161 U. S. 397, 16 S. Ct. 571, 40 L. Ed. 746; Perovich v. United States, 205 U. S. 86, 27 S. Ct. 456, 51 L. Ed. 722. But even in the absence of an exception the appellate court may consider whether there is any substantial evidence of the guilt of the accused. Wiborg v. United States, 163 U. S. 632, 16 S. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United

States, 197 U. S. 207, 25 S. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392. In this case the court will do so more readily because the liberty of the defendants is at stake and an important public question is involved.

There is little dispute as to the facts which we regard material. The defendant Latham was the master, and the defendants Cowart and Schwarz were the supercargoes on the schooner Pesaquid, a vessel flying the British flag and owned by the Bahama Fisheries Company, Ltd., of Nassau. According to her papers her destination was St. Pierre, Miquelon. She left Nassau on July 5, 1923, with a cargo of 3,500 cases of whisky owned by Pender, Collins, and Byrum of Nassau. She did not make for her pretended destination, but on July 20, 1923, was sighted by the coast guard cutter Manning about seventeen miles east of Cape Henry, Va. The Manning followed the Pesaquid to the limit of the waters she was assigned to guard. The Pesaquid was next sighted by the cutter Mascoutin on July 30, 1923, near Hog Island, Va., headed away from her pretended destination. The direct voyage from the Bahamas to the Virginia Capes should have been made by the schooner in five to seven days. The officers of the Mascoutin kept watch on the whisky-laden schooner and seized her when, according to their testimony, she approached within two miles of the Virginia coast.

After leaving Nassau and while sailing along the coast of the United States, the supercargoes had sold from the schooner to boats coming from the shore about 1,350 of her cargo of 3,500 cases of whisky. The testimony on behalf of the defendants was to the effect that the schooner was not at any time within the territorial waters of the United States. The issue of fact thus made as to possession and transportation of whisky in the United States was properly submitted to the jury, and their findings thereon against the defendants is binding here.

[2] The officers of the Pesaquid testified that if the schooner sailed into the territorial waters of the United States, the entry was accidental and involuntary when she was on her voyage back to Nassau for water and food supplies. On this point the District Judge charged the jury to acquit if they believed the schooner involuntarily crossed the line while sailing for Nassau with no intention of stopping or unloading any part of her cargo of whisky in the United States. Conversely, the instruction was given that

even the involuntary crossing of the vessel into the territorial waters of the United States while carrying a cargo of whisky would be criminal if the vessel was sailing along the coast with the intention of landing the whisky. Defendants had no ground to complain of this instruction. One who ranges along the land or water line of any country with the design of aiding in the subversion of its laws challenges that country to enforce its laws and assumes the risk of his own mistakes and the action of wind and tide and all the forces of nature.

The evidence and admissions of the defendants themselves tend strongly to prove their offense of possessing, transporting and selling whisky in the United States. The master, Latham, was sailing his vessel along the coast in association with the supercargoes, Cowart and Schwarz, who sold to boats coming out 1,350 cases of whisky. All this was done with the obvious purpose that the whisky might go into the illicit traffic in the United States. From the fact that such a large amount was sold and delivered to illicit dealers the jury could not fail to infer that some of it had been sold by the dealers and that the defendant intended that it should be sold in the United States. Thus the defendants aided and abetted the persons to whom they sold in selling the whisky in the United States contrary to its laws.

Section 332 of the Criminal Code provides:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." Comp. Stat. § 10506.

It is argued on behalf of the defendants, however, that they should escape because the aiding and abetting in the crime of those who sold in the United States whisky purchased from the ship was on the high seas outside the territorial waters of the United States. The facts do not bring the case within the general rule that the character of an act as lawful or unlawful must be determined solely by the law of the country or place where the act is done. The defense, therefore, that the defendants sold the whisky on the high seas where it was lawful to sell it is not available. The defendants being under arrest in the United States, it makes no difference that they were outside the jurisdiction when by aiding and abetting they become principals in crime committed in the United States. They could not have been extradited as fugitives from justice because they had not fled from the United States, but being under arrest in the jurisdiction they could be tried and convicted as participants in the crime.

The Supreme Court has laid down the rule that if two or more persons form a conspiracy in one state and one of them commits the overt act in another state, a conspirator who never enters the state where the overt act is done during the currency of the conspiracy, may nevertheless be tried and convicted in the state where the overt act is committed.

The language of the court is:

"As the overt acts give jurisdiction for trial, it is not essential where the conspiracy is formed so far as the jurisdiction of the court in which the indictment is found and tried is concerned."

The court further says:

"The conspiracy, therefore, cannot alone constitute the offense. It needs the addition of the overt act. Such act is something more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy and all incur guilt by it, or rather complete their guilt by it, consummating a crime by it cognizable then by the judicial tribunals, such tribunals only then acquiring jurisdiction." Hyde v. United States, 225 U. S. 347, 367, 359, 32 S. Ct. 793, 799 (56 L. Ed. 1114, Ann. Cas. 1914A, 614); Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136.

The same doctrine was laid down in England in 1803. Rex v. Bresac, 4 East, 164.

Strassheim v. Daily, 221 U. S. 280, 284, 31 S. Ct. 558, 560 (55 L. Ed. 735), seems conclusive. There the court said:

"But it may be assumed, for the moment, that Daily personally did no act in Michigan in any way connected with his plan otherwise than as we have stated above. If a jury should believe the evidence and find that Daily did the acts that led Armstrong to betray his trust, deceived the board of control, and induced by fraud the payment by the state, the usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the state until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power. Commonwealth v. Smith, 11 Allen, 243, 256, 259; Simpson v. State, 92 Ga. 41; American Banana Co. v. United Fruit Co., 213 U. S. 347, 356; Commonwealth v. Macloon, 101 Mass.

1, 6, 18. We may assume therefore that Daily is a criminal under the laws of Michigan."

Other authorities to the same effect are set out in Ann. Cas. 1914A, 614.

The conclusions we have stated on the merits dispose of all the exceptions made to the admission of testimony.

Affirmed.

SMITH, District Judge, dissents.