## THE ROSALIE M.

(District Court, S. D. Texas, at Galveston. March 23, 1925.)

No. 1245.

1. **Shipping** ⟺16—**Vessel taking cargo from foreign ships at sea not engaged in coastwise trade.**

A vessel licensed in the coastwise trade in taking contraband cargo from foreign ships at sea, with which she was proceeding toward the coast, *held* employed in a trade other than that for which she was licensed, and *subject to forfeiture under Rev. St. § 4377 (Comp. St. § 8132).*

2. **Customs duties** ⟺126 — **Domestic vessel, suspected of smuggling, may be seized and searched inside or outside of United States waters.**

Officers of a revenue cutter have authority to seize and search a vessel within the territorial waters of the United States, where there is probable cause to suspect her of smuggling or attempting to smuggle goods into the United States, and such seizure and search may be made outside of such waters, subject only to diplomatic considerations.

Forfeiture Libel. Suit by the United States against the motorboat Rosalie M. Decree of forfeiture.

Edwin R. Warnken, U. S. Asst. Dist. Atty., and H. M. Holden, U. S. Atty., both of Houston, Tex.

Campbell, Myer & Simmons, of Houston, Tex., for claimant.

HUTCHESON, District Judge. This is a libel of forfeiture under section 4377 of the Revised Statutes of the United States (Comp. St. § 8132), which provides the penalty for violation of the license of a vessel when employed in any other trade than that for which she is licensed.

The undisputed facts are: That the Rosalie M., licensed in the coasting trade, was seized by a revenue cutter. 19½ miles from the nearest point of land; she then having on board a cargo of 811 sacks of assorted liquors, 6 cases of George IV whisky, 20 cases of Becarde rum, 24 cases of gin, and 4 barrels of beer. There were two British schooners some 3 or 4 miles further out in the water at the time. That the vessel carried no manifest of its cargo. That it was proceeding in the general direction of Galveston from the point where the two British schooners were anchored. That there was no permit aboard from the Commissioner of Internal Revenue either to transport or import said cargo of liquor, and that the master did not even claim to have a permit.

It was testified that the master had stated that he had gotten this liquor from one of the British schooners; that he was taking it to Houston, with the intention of unloading it somewhere in the vicinity of Houston, where there was a road into the city, but that, if he was hard-pressed, he intended to hide the cargo of liquor somewhere in the vicinity of Lynchburg. He further stated that this was his first venture into the rum-running business.

In addition to the forfeiture under section 4377, the libel stated other grounds of forfeiture, none of which, in view of the disposition of the case, it will be necessary to discuss.

[1] The position of claimant is that, in order to justify a forfeiture, there must be proof of violation by the ship of some law; that no law was violated in this case, and that, even if it were violated, the evidence was obtained by an unlawful and unconstitutional search and seizure. I agree with the claimant that the possession of the liquors at the place where they were found was not in and of itself a violation of law, and further that, under the facts in this case, no completed violation of either the customs or the prohibition laws was shown. It was shown, however, that the vessel was engaged in a business other than that for which she was licensed, and this, whether the business was unlawful or not, would subject the vessel to forfeiture. The Cherokee (D. C.) 292 F. 212; Alex Clark (D. C.) 294 F. 904.

[2] With the point that the seizure was unlawful I cannot agree. That the officers of a revenue cutter have the authority to seize and search a vessel within the territorial waters of the United States, where there is probable cause to suspect it is smuggling, or endeavoring to smuggle, goods into the United States, without warrant, is too clearly settled since the foundation of this government, both by statute and judicial decision, to admit of argument here. An excellent discussion of the whole matter may be found in George Carroll and John Kiro v. United States, 45 S. Ct. 280, 69 L. Ed. ——, handed down March 2, 1925. That this right is as strong and vigorous outside of the territorial waters as inside those waters must also stand to reason, for the waters of the high seas belong as much to the United States as to any other nation, and the powers of the United States may be as well exercised there as in her own waters, subject only to diplomatic considerations. U. S. v. Bowman, 260 U. S. 99, 43 S. Ct. 39, 67 L. Ed. 149; The Ship Richmond v. U. S., 9 Cranch, 102, 3 L. Ed. 670; Oakes v. U. S., 174 U. S. 778, 19 S. Ct. 864, 43 L. Ed. 1169.

It is my view that this right extends as fully, as far as the authority goes, to foreign ships as to those of our own registry, subject only to diplomatic considerations. Certainly domestic ships may be so seized as effectually without as within our territorial waters. The Marianna Flora, 11 Wheat. 1, 6 L. Ed. 405, cited by claimant, thoroughly establishes the point, where it is said: "It is true that it has been held in the courts of this country that American ships, offending against our laws, and foreign ships, in like manner offending within our jurisdiction, may afterwards be pursued and seized upon the ocean, and rightfully brought into our ports for adjudication."

This citation settles the power of the seizing officers and the ground of forfeiture, engaging in business other than that of the license, to wit, the business of handling contraband goods, settles the right of the seizure, and the consequent right of forfeiture.