## THE MURIEL E. WINTERS.

(District Court, S. D. Texas, at Galveston. June 4, 1925.)

No. 1220.

1. **Customs duties** ⟷130—**Seizure of liquor-laden ship outside 3-mile limit prima facie rightful.**

Seizure of liquor-laden ship within 12 miles of shore was prima facie rightful, though the vessel was never within 3-mile limit.

2. **Admiralty** ⟷23—**Has jurisdiction for forfeiture of liquor-laden ship seized outside 3-mile limit.**

United States court held to have jurisdiction to inquire into grounds of forfeiture of liquor-laden ship seized outside 3-mile limit.

3. **Customs duties** ⟷130—**Mere selling on high seas with knowledge held not an illegal introduction of liquor into country, so as to render it forfeitable.**

There is no introduction of liquor into the United States by a vessel, so as to render it forfeitable, where it merely makes completed sales of the liquor on the high seas to other boats with knowledge that it is to be smuggled, but without any prearrangement with the boats, and without any further connection with the transaction.

4. **Customs duties** ⟷130 — **Vessel unlading within 4-league limit subject to forfeiture, though not destined to American port.**

A vessel, the master of which, at a point within 4 leagues of shore, permits liquor to be unladen from it, is, with the liquor unloaded, but not the balance of the cargo, subject to forfeiture, under Tariff Act 1922, § 586 (Comp. St. Ann. Supp. 1923, § 5841h5), though the vessel was not destined to a port of the United States.

Forfeiture Libel. Proceeding by the United States against the Muriel E. Winters. Decree of forfeiture.

Edwin R. Warnken, Asst. U. S. Atty., of Houston, Tex.

McDonald & Wayman, of Galveston, Tex., for defendant.

HUTCHESON, District Judge. This is a libel of information against the Muriel E. Winters, seized off the coast of Galveston, January 6, 1924, with a cargo of intoxicating liquors, most of which was packed six bottles to the package and sewn up in burlap sacks. She was well within the 12-mile limit at the time she was seized, but there is no proof that she ever came within the 3-mile limit, and the proof is overwhelming that she had been outside of the 12-mile limit, and had only come in where she was seized for protection against a heavy norther then blowing.

The captain and mate of the Winters admitted on the trial that the Winters was regularly engaged in bringing cargoes of liquors from the Bahama Islands to the vicinity of the United States, and there, outside of the 12-mile limit, selling those liquors as completed transactions to small boats, which they had no control over or connection with, but which they knew would smuggle, or endeavor to smuggle, the liquor within the United States. The libel contains many grounds of forfeiture, all of which, with the exception of the eighth and last ground, seek to forfeit the vessel on account of claimed illegal activities off the coast of Galveston.

The eighth ground claims a forfeiture under sections 591 and 592 of the Tariff Act (Comp. St. Ann. Supp. 1923, §§ 5841h10, 5841h11), upon the allegation that the Muriel E. Winters, in pursuance of its unlawful business of introducing foreign merchandise into the United States contrary to law, arrived off the port of New Orleans near Chandeleur Island, and did then and there, by means of certain false practices and papers and by connivance with certain persons and small boats, unlawfully and clandestinely introduce into the commerce of the United States intoxicating liquors, and after the case had been submitted and the evidence heard the government applied for leave to amend its libel, and leave was on the 3d day of June granted to amend its libel by adding thereto a ground of forfeiture that the Muriel E. Winters, arriving from a foreign port, did off the mouth of the Mississippi river, within the vicinity of Chandeleur Island, and at a point within 12 miles from the shores of the United States, allow certain merchandise, to wit, intoxicating liquors, to be unladen from the vessel after its arrival within 4 leagues of the coast of the United States. Wherefore, by reason of sections 586 and 594 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h5, 5841h13) the vessel and her cargo became and remained forfeited to the United States of America.

[1, 2] The defendant in limine attacks the libel on the ground that the seizure was unlawful, since it occurred outside of the 3-mile limit, and since no offense had been committed by the vessel within the 4 leagues off the coast. Upon this it is sufficient to say that this case, arising before the execution of the British liquor treaty, is governed as to the rights of search and seizure by the considerations, already set out by me in The Island Home,[1] and the Rosalie M., 4 F.(2d) 815. The boat having been found liquor-laden, under the circumstances the seizure was prima facie rightful and valid, and this court has jurisdiction to inquire into whether any of the grounds of forfeiture exist. Coming to that inquiry, I think it clear that the evidence fails to show any violation of the laws of the United States, or any grounds of forfeiture occurring off the coast of Galveston; that upon the grounds of its libel 1 to 7, the government's case must fail, and unless it has established a ground of forfeiture off the coast of New Orleans, forfeiture upon the primary grounds of the libel must be denied.

[3] For this forfeiture the government relies upon proof that the vessel stopped at Rum Row, off the coast of New Orleans, and

[1] United States v. British Auxiliary Schooner Island Home, etc.

In the District Court of the United States for the Southern District of Texas, at Galveston.

Hutcheson, District Judge. While many interesting questions are raised as to the phases of international law involved in the decision of this case, I am content to follow, for that phase of the matter, the opinion of Chief Justice Marshall in Church v. Hubbart, 2 Cranch, 187, 2 L. Ed. 249, believing that from the standpoint of judicial cognizance the Congress of the United States is competent to assume the authority which they have assumed.

As to the other questions raised, I think the evidence ample to bring these within the principles of U. S. v. Bengochea (C. C. A.) 279 F. 537, United States v. The Grace and Ruby (D. C.) 283 F. 475, and United States v. The Henry L. Marshall (D. C.) 286 F. 260.

I am therefore of the opinion that the government should have a decree of forfeiture and sale, both as to the schooner and her cargo.

there sold liquor to boats from the shore. The evidence establishes no more, and while the government insists feebly that it does show some contact with the shore by delivery to shore boats acting in concert with it by prearrangement for continuous carriage, the facts overwhelmingly establish that the transactions of the Winters off New Orleans were merely those of anchoring off Rum Row, and there making definitive and completed sales to purchasers who would put off from the shore without any prearrangement with the Winters and without any further connection of the Winters with the transaction.

Accepting this finding of fact, the government still insists that, upon the authority of United States v. Bengochea (C. C. A.) 279 F. 537, The Grace and Ruby (D. C.) 283 F. 475, The Henry L. Marshall (D. C.) 286 F. 260, The Henry L. Marshall (C. C. A.) 292 F. 486, The Henry L. Marshall, 263 U. S. 712, 44 S. Ct. 38, 68 L. Ed. 519, 520, Latham et al. v. United States (C. C. A.) 2 F.(2d) 210, United States v. 2,180 Cases of Champagne (Schooner Zeehond, Eastern District of New York) 4 F.(2d) 735, and The Island Home, supra, the Winters is liable to forfeiture, contending that the selling on the high seas, with knowledge that the liquor is to be introduced illegally into the commerce of this country, constitutes an illegal introduction of intoxicating liquors into this country, under sections 591, 592, Tariff Act.

With this contention I cannot agree. Whatever may be the correct rule as to the status of a person in a criminal trial as aider and abettor, in performing such acts as I find in this case, have been performed by the captain of the Winters, that is, making completed sales to shore boats, with knowledge that the shore boats intended to smuggle the contents in, is not necessary for me to decide here, and I withhold my opinion.

As to the claimed forfeiture of the ship and cargo, however, while I agree with the conclusion reached in The Grace and Ruby, The Henry L. Marshall, and others of that kind, and have applied them in cases before me where contact was made with shore boats for the purpose of delivering the cargo to the shore, as a matter of continuous carriage, no sort of sound legal reasoning could stretch the principle applied in those cases to cause a forfeiture of the Winters upon the theory of its introduction of liquor by constructive presence in the United States, where the transaction was finished at sea, and the Winters thereafter had no connection of any kind with the liquor, and I therefore find that there was no introduction of liquor into the United States by the Winters, as charged in paragraph VIII of the libel, and that the vessel was not forfeitable upon that ground.

[4] The case is different, however, as to the allegations of the amendment just filed. That amendment merely seeks to furnish a basis in the pleadings for the application of the law to the admitted facts, and is supported by the entire record, which shows beyond question that the master of the Winters did, at a point within 12 miles from shore, permit liquors to be unladen from his vessel. I realize that there is room for the contention that that section should be applied only to vessels which are intending to make some port of the United States, and which deliver some part of their cargo before they reach their final destination, and ought not to be applied to vessels which are not so destined. But the language of the statute is plain, and is not so qualified.

The facts of this case bring it within the mischief which the statute sought to avoid, and it is rather a refined than a fair construction which denies its application to this kind of case. I am of the opinion, then, that upon the final ground of the libel, as introduced by the amendment of June 3, 1925, the Winters and such of the cargo as was then unladen became subject to forfeiture, but that the remainder of the cargo, that which was on board at the time of seizure off Galveston, not having been sought to be unladen in the United States, and not having been unladen, is not so subject.

Let a decree be drawn in accordance herewith, and presented for settlement and filing in 10 days.