## ROMANO et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 20, 1925.)

No. 77.

1. Criminal law ⚖️1165(1)—Prosecution will be treated on appeal as though being on first count of indictment only, where acquittal was had on second count.

Where jury found defendants guilty on first count of indictment and acquitted them on second count, Circuit Court of Appeals on appeal will treat case as though prosecution had been on first count alone.

2. Customs duties ⚖️134—Intoxicating liquors ⚖️236(20)—Proof held not to establish that liquors were imported or brought into country.

Proof *held* to fail to establish that liquors, as charged in indictment, were either imported or brought into this country, and hence submission to jury was error.

3. Criminal law ⚖️18—Prohibition law effective only in territory of United States.

The National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), as applied to unlawful importation, is effective only in the territory of the United States.

**4. Intoxicating liquors ☞147(1)—Not crime to sell or deliver intoxicating liquors on the high seas.**

It is not a crime to sell or deliver intoxicating liquors on the high seas.

**5. Customs duties ☞134—Intoxicating liquors ☞224—Burden rests on government to prove importation of liquor within judicial district, where prosecution was had.**

In prosecution for illegal importation of liquors, burden rested on government to prove beyond reasonable doubt that cargo was imported within judicial district where action was prosecuted.

**6. Criminal law ☞753(2)—Court should direct verdict, where facts are as consistent with innocence as with guilt.**

Where facts are as consistent with innocence as with guilt of accused, there is nothing to submit to jury, and court should direct verdict on motion duly presented.

In Error to the District Court of the United States for the Eastern District of New York.

Criminal prosecution of Michele Romano and others for illegal importation of liquor. From a judgment of conviction, defendants bring error. Reversed, with directions.

Wallace E. J. Collins, of Jamaica, N. Y., and Morris Kamber, of Brooklyn, N. Y. (Otho S. Bowling and Vine H. Smith, both of New York City, of counsel), for plaintiffs in error.

Ralph C. Greene, U. S. Atty., and William A. De Groot, Asst. U. S. Atty., both of Brooklyn, N. Y.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. There are two counts to the indictment now said to charge the defendants below with the crime of violating the Tariff Act of 1922, § 593 (Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h13). The first count charges that between December 1, 1924, and January 1, 1925, "in the waters of Long Island Sound, off Huntington and within Huntington Harbor, Suffolk county, Long Island, state and Eastern district of New York, * * * did unlawfully, fraudulently and knowingly import and bring into the United States * * * upwards of 8,000 cases of whisky and champagne, the same being intoxicating liquors, * * * without first obtaining a permit from the Commissioner of Internal Revenue so to do, in violation of the Act of Congress of October 28, 1919, known as the National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]. * * *"

The second count charges that during the same period and at the same place the defendants below "did unlawfully, fraudulently and knowingly conceal merchandise after the same had been brought into the United States contrary to law and to the provisions of * * * the National Prohibition Act," and in that "during the times aforesaid there was imported and brought into the United States * * * upwards of 8,000 cases of intoxicating liquors, * * * and thereafter, at the times and places before set forth, the said defendants did conceal aboard * * * the auxiliary schooner, known as 'Arco Felice II,' the said intoxicating liquors, * * * knowing the same to have been imported and brought into the United States, contrary to law as aforesaid."

A motion was made to dismiss the indictment at the opening of the trial, which was denied, and upon request of counsel for the defendants below the government's counsel announced that the defendants below were indicted under the Tariff Act, § 593 (b). They were convicted on the first count of the indictment and acquitted on the second.

The evidence established that the Arco Felice II was anchored at Huntington Harbor on the 31st of December, 1924. She was a four-masted schooner, about 250 feet long and of Italian registry. The government patrol boat drew near, and members of the United States Coast Guard went aboard the schooner. One of the men engaged the captain in conversation and asked for the ship's papers, which were produced, and they purported to be clearance papers from Honduras to Havana in ballast, dated December 22, 1924. A search of the vessel was made, and some loose corks and broken bottles were found. Thereupon the captain was asked where the corks came from, and he said "they were left there by the stevedores in Havana." Whereupon the captain was asked by the agent, "I thought you weren't in Havana?" to which the captain "shrugged his shoulders." A search warrant was procured, and examination of the vessel made, and there were found, in one of the rooms, three cases of liquor nailed up in a locker. In the crew's quarters, several partly filled bottles were found. The schooner was then towed to anchorage off Bedlow's Island. On January 2d further search was made, and there was found in a chest in one of the rooms other papers which purported to be clearance papers from Havana to St. Pierre, which were dated De-

cember 7, 1924. On this manifest it was stated that in the cargo there were 8,215 cases of liquor. A log book was found, and there were entries of records showing that on December 11th the vessel was sailing north along the coast of the United States until December 17th, when Cape Hatteras was rounded, and then there was a change of the course northeast until December 19th, when a heavy sea was encountered. The entries then record running before the storm until December 21st or 22d, when the records indicate that the vessel was laboring heavily because of the heavy sea, with considerable increase of water in the bilges. There was an entry that the water in the bilges was increasing, the pumps were clogged with sand, and the vessel was in serious danger. Further entries tell of some distress of the vessel. The cases were found to contain Scotch whisky and champagne.

[1] Considering the action of the jury, we may treat the case as though the prosecution had been upon the first count alone. The indictment is badly drawn, and a reading of all of it leaves one in doubt whether the pleader intended to rest upon the Prohibition Act or upon section 593 of the Tariff Bill of 1922. It is certainly all the government could ask from us to assume, for purposes of argument only, that the indictment was intended to rest upon both statutes, and to charge a violation of both or either.

[2] But with all these assumptions it still remains true that the government charged and undertook to prove as the incriminating facts that upwards of 8,000 cases of intoxicating liquor were *imported and brought into the United States* in and by the schooner of the plaintiffs in error. In our opinion the proof wholly failed to establish that any such liquors as charged in the indictment were either imported or brought into this country.

It is not necessary to investigate the difference, if any, between importation and "bringing in," or to consider whether any act of smuggling was shown. The first question for any reviewing court is this: Was the jury properly permitted to infer from the meager facts above stated that a sub-stantial cargo of prohibited liquor was brought or imported or smuggled into the United States by the defendant? We think no reasonable man could draw such an inference, and therefore it was error to let the jury speculate.

[3-5] We cannot eliminate the possibility—indeed, the probability—that the cargo, if ever landed by defendants, was at a place less frequented than the shores of the Eastern district of New York, or that the defendants had parted with it outside the United States, or even abandoned it at sea. This criminal phase of the Prohibition Law is effective only in the territory of the United States. Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306. It is not a crime to sell or deliver intoxicating liquors on the high seas. The Over the Top (D. C.) 5 F.(2d) 828. It is suggested that we may infer that there was an importation by smaller boats, which unloaded the cargo while at sea. But this could not be an importation by the defendants below. The burden rested upon the government to prove beyond a reasonable doubt that the cargo was imported within the Eastern district of New York. United States v. Meagher (C. C.) 37 F. 875.

[6] We find nothing in this record, except the presence of the ship in Huntington Harbor on the morning of December 31st and papers indicating a transportation of cargo to ports named therein, which may or may not have been fictitious. The log book tells us her position and weather conditions on days during her voyage. It shows nothing more than this. These circumstances, which are presented and from which we are asked to draw inferences, do not exclude the hypothesis of innocence which may be drawn. The facts are as consistent with innocence as with the guilt of the accused, and under such proof there was nothing to be submitted to the jury, and it was the duty of the court to direct a verdict upon motion which was duly presented. Nosowitz v. United States (C. C. A.) 282 F. 575.

The judgment of conviction is reversed, with directions to the lower court to dismiss the indictment.