**UNITED STATES v. THE CHERIE (two cases), with libel against its cargo of intoxicating liquors.**

(District Court, D. Maine, S. D. January 6, 1926.)

Nos. 149–151.

**1. Customs duties ⏗130—For vessel to take position for purpose of disposing of cargo, relative to illegal unlading, is an "arrival."**

For vessel to take position within four leagues of coast for purpose of disposing of cargo is an "arrival," within Tariff Act 1922, § 586 (Comp. St. Ann. Supp. 1923, § 5841h5), relative to illegal unlading.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, 'Arrive—Arrival (of Vessel).]

**2. Customs duties ⏗130—For unlading to be illegal, master need not direct, but only allow, it.**

Under Tariff Act 1922, § 586 (Comp. St. Ann. Supp. 1923, § 5841h5), for unlading to be illegal, it need not be at direction of master; condition of statute being if he "allows" it.

**3. Customs duties ⏗130—Unlading, though to complete legal liquor sales on high seas, unlawful.**

Unlading, permitted by master, of parts of cargo of liquor as sold, within four leagues of coast, is illegal, under Tariff Act 1922, § 586 (Comp. St. Ann. Supp. 1923, § 5841h5), though the sales, being beyond the three-mile limit, did not constitute offenses.

**4. Customs duties ⏗130—All of liquor cargo forfeited by illegal unlading of parts to complete sales.**

Under Tariff Act 1922, § 586 (Comp. St. Ann. Supp. 1923, § 5841h5), declaring offense if master allows "any merchandise" to be unladen from vessel within four leagues of coast, etc., and as part of penalty providing "such vessel and the merchandise" shall be forfeited, where position was taken off coast for purpose of disposing of all cargo of liquor, all of it is subject to forfeiture, though there was sale and unlading of only part before seizure.

**5. Customs duties ⏗129—Minimum penalty. assessed against master for permitting illegal unlading from vessel.**

Minimum penalty of $1,000 will be assessed against master for allowing unlading from vessel under conditions prohibited by Tariff Act 1922, § 586 (Comp. St. Ann.. Supp. 1923, § 5841h5), court not being informed that the merchandise, liquor, has any market value.

Forfeiture Libels. Proceedings by the United States against the schooner Cherie and against 3,300 cases, more or less, of intoxicating liquors, constituting its cargo. Decrees for forfeiture and penalty.

Frederick R. Dyer, U. S. Atty., and William B. Nulty, Asst. U. S. Dist. Atty., both of Portland, Me.

Louis Halle, of New York City, C. F. Hathaway, of Lynn, Mass., Max L. Pinansky, of Portland, Me., and John B. Merrill, of Bangor, Me., for claimant.

PETERS, District Judge. These three libels, two against the vessel and one against its cargo of liquors, involve the same facts and were tried together. Numerous grounds of forfeiture are set forth in the libels, but I am unable to find substantial merit in any of them except those based on section 586 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h5), which reads as follows:

5841h5. * * * *Unlading—Exception.* —The master of any vessel from a foreign port or place who allows any merchandise (including sea stores) to be unladen from such vessel at any time after its arrival within four leagues of the coast of the United States and before such vessel has come to the proper place for the discharge of such merchandise, and before he has received a permit to unlade, shall be liable to a penalty equal to twice the value of the merchandise but not less than $1,000, and such vessel and the merchandise shall be subject to seizure and forfeiture: Provided, That whenever any part of the cargo or stores of a vessel has been unladen or transshipped because of accident, stress of weather, or other

necessity, the master of such vessel shall, as soon as possible thereafter, notify the collector of the district within which such unlading or transshipment has occurred, or the collector within the district at which such vessel shall first arrive thereafter, and shall furnish proof that such unlading or transshipment was made necessary by accident, stress of weather, or other unavoidable cause, and if the collector is satisfied that the unlading or transshipment was in fact due to accident, stress of weather, or other necessity the penalties above described shall not be incurred." Act Sept. 21, 1922, c. 356, tit. 4, § 586, 42 Stat. 980.

[1-3] The first question is: Was there a violation of this statute?

From the evidence I find the following facts:

The two-masted schooner Cherie, 95 tons burden, of French registry and flying that flag, having cleared from Halifax for Nassau with a large cargo of liquors, arrived off the coast of Maine about June 19th last, and anchored 7 or 8 miles southwesterly of Swan's Island. The weather had been pleasant, and the vessel had not encountered any stress, or met with any accident. It is impossible to escape the conclusion that she came to this position for the purpose of disposing of her cargo. This was an arrival under the statute. Harrison v. Vose, 9 How. (U. S.) 381, 13 L. Ed. 179. The government produced eight witnesses, residents of Swan's Island and vicinity, each of whom bought liquors, some in bottle and some in case lots; in each case the goods being loaded from the vessel into the small boat of the purchaser and taken away. This continued from the 19th to the morning of the 21st, when prohibition and customs officers, learning the situation, came from shore and, having been guided to the vessel by the ringing of its bell, it being somewhat foggy at the time, boarded her and had a conversation with the French captain, who has filed claims for the vessel and cargo.

The officers told the captain that they had information that the vessel was in touch with the shore, selling liquor, and that they should seize her. The captain replied that he had a right to be where he was. The vessel and cargo were thereupon seized and taken to port.

In other conversations between the officers and the captain, he did not deny that he had allowed liquor to be sold, but vigorously asserted his right to do so in that position.

9 F.(2d)—41

It also appears that the same vessel, with the same captain, had been in about the same position the month before, and that at least one sale of liquor was made over the side, and at that time the captain inquired whether other rum vessels came in as near as he was. It also appears that the same vessel was engaged in the same traffic in Boston Bay the month before.

It is admitted that the master had no permit to unlade, nor had he sought any. Therefore there appears to be no question that we have a case of a master of a vessel from a foreign port, with merchandise for sale, within four leagues of our coast, not having come to the proper place for discharge, having no permit to unlade, and no accident or stress of weather necessitating his presence. If this state of facts is supplemented by an unlading of merchandise, permitted by the master, there is a violation of law, justifying seizure and forfeiture.

Counsel for the claimant insist that there is no proof that the unlading was "at the direction of the master." The language of the statute is: "Allows any merchandise to be unladen." The proof that the master allowed the liquor in many separate instances to be unloaded into small boats and taken away is ample, and if this is an "unlading" under the statute a case for forfeiture is made out.

Counsel urge that the evidence shows nothing more than sales outside the three-mile limit, that they were small transactions, that there is no evidence that the liquor reached the shore, and that this is not "unlading."

The transactions were doubtless sales of inconsiderable quantities, compared with the total amount of liquor on board, but there was an unlading of merchandise to complete the sales. There were both sales and unlading. The sales as such, being outside the three-mile limit, on the high seas, were not violations of our laws. Romano v. U. S. (C. C. A. 2d Circuit) 9 F.(2d) 522, decided November 20, 1925. The unlading as such is an offense by itself. The statute does not make the quantity important. I feel obliged to hold that there was an "unlading," under section 586, and a violation of that section.

[4] The next question is as to the penalties to be imposed.

It is clear that the vessel is forfeitable. As to the merchandise, it is claimed in behalf of the master that under the statute only such as was actually unladen and taken away can be forfeited. It will be observed that

the language of the statute is "such vessel and the merchandise shall be subject to seizure and forfeiture." The old statute covering the same subject read: "The merchandise so unladen shall be forfeited." The vessel was not forfeitable, and the fine was limited to $1,000. The new act was broader, and adopted the policy of making the penalties more severe. The forfeiture of merchandise is not expressly limited to the unladen part. In this case I find that the master of the vessel came to these waters, and inside the four-league distance from the coast, for the purpose and with the intention of unloading his whole cargo of liquor. He was actually doing it when interrupted by the officers. The attitude of the master is important. If he "allows" merchandise to be unladen from his ship, he incurs the penalty.

The things done were all part of the proceeding of unlading. While the merchandise was not all taken out, I consider that it was being unladen, and that the master was "allowing" it. This case differs from the Muriel E. Winters Case (D. C.) 6 F.(2d) 466, in this respect: Here the master sought to unlade his whole cargo; there the contrary was true. The Over the Top (D. C.) 5 F.(2d) 838. Where the master intends to allow all the goods to be unladen, and proceeds with the unlawful attempt, the whole cargo becomes infected, as it were, and contraband. The part not unladen is not made innocent simply because of a seizure before the whole could be put off.

If the change in the language of the statute in this respect has significance, and I think it does, it is broadened to cover a case like this, where a cargo all of one kind of goods is being unladen, and the language, "such vessel and the merchandise shall be subject to seizure and forfeiture," includes merchandise being unladen, as well as that actually taken away from the ship.

Accordingly the liquors seized are forfeited, as well as the vessel.

[5] The statute says that the master shall further be liable to a penalty equal to twice the value of the merchandise, but not less than $1,000. I am not advised that the merchandise has any market value, and assess the minimum penalty of $1,000.

I consider that the violation of our laws on this and previous occasions, and the obvious attempt to evade the prohibition laws in the introduction of a very large quantity of liquor into the country, justify the imposition of all the penalties provided by law.

Decrees will be made accordingly.